# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1189**

**CAF 15-01025**

PRESENT: CENTRA, J.P., CARNI, NEMOYER, CURRAN, AND TROUTMAN, JJ.

---

IN THE MATTER OF JENNIFER L.,
PETITIONER-RESPONDENT,

                V                          MEMORANDUM AND ORDER

GERALD S., JR., RESPONDENT-APPELLANT.
------------------------------------------
IN THE MATTER OF GERALD S., JR.,
PETITIONER-APPELLANT,

                  V

JENNIFER L., RESPONDENT-RESPONDENT.
------------------------------------------
IN THE MATTER OF MELINDA L.-B.,
PETITIONER-RESPONDENT,

                  V

GERALD S., JR., RESPONDENT-APPELLANT,
AND JENNIFER L., RESPONDENT-RESPONDENT.
------------------------------------------
IN THE MATTER OF JENNIFER L., PETITIONER,

                  V

SHANE C., RESPONDENT.

---

KIMBERLY J. CZAPRANSKI, INTERIM CONFLICT DEFENDER, ROCHESTER (KATHLEEN P. REARDON OF COUNSEL), FOR RESPONDENT-APPELLANT AND PETITIONER-APPELLANT.

PAUL B. WATKINS, FAIRPORT, FOR PETITIONER-RESPONDENT JENNIFER L. AND RESPONDENT-RESPONDENT.

NATHAN A. VANLOON, ATTORNEY FOR THE CHILD, ROCHESTER.

---

    Appeal from an order of the Family Court, Monroe County (Patricia E. Gallaher, J.), entered April 29, 2015 in proceedings pursuant to Family Court Act article 5 and article 6. The order, among other things, vacated the acknowledgment of paternity signed by Gerald S., Jr., and Jennifer L.

    It is hereby ORDERED that the order so appealed from is

unanimously reversed on the law without costs, the acknowledgment of paternity, custody order, and petition for modification of custody are reinstated, the second and fifth through eighth ordering paragraphs are vacated and the matter is remitted to Family Court, Monroe County, for further proceedings in accordance with the following memorandum: Petitioner mother in the first proceeding is the biological mother of a child born in October 2012. A week after the child's birth, the mother and respondent in the first proceeding, Gerald S., Jr. (Gerald), signed an acknowledgment of paternity. The mother was unable to care for the child because of her own mental health issues, and custody was granted to Gerald. Approximately one year later, Family Court issued a consent order granting the mother and Gerald joint custody with Gerald having primary physical residency. Less than two months later, however, in December 2013, the mother filed the petition in the first proceeding to vacate the acknowledgment of paternity. Gerald then filed the petition in the second proceeding to modify custody by seeking sole custody of the child. In the third proceeding, the child's maternal grandmother filed a petition seeking custody of the child. In the fourth proceeding, the mother filed a paternity petition against Shane C. (Shane) in March 2014.

The mother and Shane appeared before the court on the paternity petition, and Shane, who had no involvement in the child's life to that point, expressed in no uncertain terms that he wanted nothing to do with the child. Nevertheless, the court, without notification to Gerald, ordered a genetic marker test, which indicated a 99.99% probability that Shane was the child's father. At the next court appearance, on the mother's petition to vacate the acknowledgment of paternity, Gerald raised the defense of equitable estoppel, and the court reluctantly ordered a hearing. At the conclusion of the hearing, the court, inter alia, granted the mother's petition to vacate the acknowledgment of paternity, dismissed Gerald's modification petition with prejudice, vacated the custody order, implicitly granted the mother's paternity petition with respect to Shane by declaring Shane the father of the child, and removed Gerald as a party in the grandmother's proceeding. According to the parties, the child is currently in the custody of the maternal grandmother.

"New York courts have long applied the doctrine of estoppel in paternity and support proceedings" (*Matter of Shondel J. v Mark D.*, 7 NY3d 320, 326). The Legislature has specifically incorporated the estoppel doctrine in statutes. Specifically, the pertinent statutes provide that no genetic marker test "shall be ordered . . . upon a written finding by the court that it is not in the best interests of the child on the basis of . . . equitable estoppel" (Family Ct Act §§ 418 [a]; 532 [a]). Estoppel may be used "in the offensive posture to enforce rights or the defensive posture to prevent rights from being enforced" (*Matter of Juanita A. v Kenneth Mark N.*, 15 NY3d 1, 6). Whether estoppel should be applied depends entirely on the best interests of the child and not the equities between the adults (*see Shondel J.*, 7 NY3d at 330; *Matter of Isaiah A.C. v Faith T.*, 43 AD3d 1048, 1048).

"Family Court should consider paternity by estoppel before it

decides whether to test for biological paternity" (*Shondel J.*, 7 NY3d at 330; *see Isaiah A.C.*, 43 AD3d at 1048). That did not occur here because Gerald was not a named party in the paternity proceeding and did not otherwise appear when the court ordered Shane to submit to a genetic marker test, so he did not have the opportunity to raise the doctrine of estoppel. The court should have joined Gerald in that proceeding or otherwise notified him before it ordered the test (*see Isaiah A.C.*, 43 AD3d at 1048-1049). After all, Gerald was not only the acknowledged father of the child, but was the custodial parent of the child, and the court was well aware of those facts inasmuch as it had issued the custody orders. The court made it clear in its decision, however, that even if Gerald had made a timely objection and raised the defense earlier, the court nevertheless would have ordered the test because the child was young and "the truth is important." That is contrary to both the plain language of the statute and statements of law by the Court of Appeals.

Even though the genetic marker test had already been conducted, the court was still authorized to consider the estoppel issue (*see Shondel J.*, 7 NY3d at 330). We conclude that, although the court held a hearing on that issue, its decision shows that it has little regard for the doctrine of estoppel, despite the fact that it "is now secured by statute in New York" (*id.*). The court stated in its decision that it routinely allows genetic marker tests involving babies and toddlers even when the child has an acknowledged father. The court remarked that the statute "was obviously designed to prevent everyone from learning in a proper case that the legal father was indeed not the biological father. In decades and centuries past this intended protection could have worked. The reality now however is that there is no way to protect a child from a genetic marker test when someone is determined to have one." Although a child has an interest in finding out the identity of his or her biological father, "in many instances a child also has an interest—no less powerful—in maintaining [his or] her relationship with the man who led [him or] her to believe that he is [his or] her father" (*id.* at 329). We conclude that Gerald was denied a fair hearing on the issue of equitable estoppel, and we therefore reverse the order, reinstate the acknowledgment of paternity, custody order, and petition for modification of custody, and vacate the second and fifth through eighth ordering paragraphs. We remit the matter to Family Court for further proceedings on the petitions before a different judge. Owing to the passage of time since the entry of the order on appeal, which directed Gerald to immediately turn the child over to the mother, we conclude that, pending a new determination, the maternal grandmother shall retain physical custody of the child.

Entered:  December 23, 2016                    Frances E. Cafarell
                                               Clerk of the Court